1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS GRIMES,<br>CDCR #V-90377, | Civil No.   06-2309 BTM (LSP) |
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FIRST AMENDMENT CLAIMS** |
| JAMES E. TILTON; A. FAVILA;<br>S. JUAREZ; REVEREND STEVE<br>FRANCIS; ALAN HERNANDEZ;<br>GEORGE GIURBINO; V.M. ALMAGER; | |
| Defendants. | |

## I.

## PROCEDURAL HISTORY

Dennis Grimes ("Plaintiff"), a California state prisoner currently incarcerated at the Tallahatchie County Correctional Facility located in Tutwiler, Mississippi, is proceeding pro se and *in forma pauperis* with a Complaint filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983.

On September 5, 2007, the Court granted in part and denied in part Defendants' Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6). Specifically, the Court: (1) dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities as barred by the Eleventh Amendment; (2) denied Defendants' Motion to Dismiss Plaintiff's Complaint for failing to allege personal acts or omissions; (3) denied Defendants' Motion to Dismiss Plaintiff's

equal protection claims; (4) denied Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims; and (5) denied Defendants' Motion to Dismiss Plaintiff's Complaint on qualified immunity grounds. *See* Sept. 5, 2007 Order at 14-15.

Defendants filed their Answer [Doc. No. 63] and moved for summary judgment on the grounds that: (1) no genuine issues of material fact exist to show that Defendants violated Plaintiff's Eighth Amendment rights; (2) Defendants did not substantially burden Plaintiff's religious beliefs in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et. seq*; (3) Plaintiff's claims for declaratory and injunctive relief are moot; and (4) Defendants are entitled to qualified immunity.

The Court advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). Plaintiff filed his Opposition on September 24, 2008 and his Complaint is verified under penalty of perjury.

On March 12, 2009, this Court granted in part and denied in part Defendants' Motion for Summary Judgment. *See* Mar. 12, 2009 Order at 21. Defendants appealed the Court's Order denying Defendants' claim for qualified immunity to the United States Court of Appeal for the Ninth Circuit. On July 14, 2010, the Ninth Circuit affirmed in part the Court's March 12, 2009 Order and remanded the issue of whether Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim. This Court issued an Order directing the Defendants to file supplemental briefing which was filed on August 27, 2010 and Plaintiff was permitted to file an opposition which was filed on September 28, 2010.

## II.

### FACTUAL BACKGROUND

On November 20, 2005, Plaintiff wrote to the Centinela ("CEN") Food Services Manager requesting a vegetarian diet in light of his "sincerely held religious beliefs." (*See* Compl. at 5, Exhibit "D.") Assistant Food Manager at CEN, J.G. Corey, responded to Plaintiff's request on December 3, 2005 by informing Plaintiff that he must have the Facility Chaplain or a "Religious Representative" from his faith notify the Food Services Manager that Plaintiff is eligible to

1   receive a religious diet pursuant to CAL. CODE REGS. TIT. 15 § 3054. (*Id.*, Exhibit "E,"

2   Memorandum from J.G. Corey to Plaintiff dated December 3, 2005.)

3       Plaintiff submitted an "Inmate Request for Interview" form to Defendant Francis, the

4   Chaplain at Centinela on January 11, 2006. (*Id.*, Exhibit "F." Inmate Request for Interview

5   dated Jan. 11, 2006.) In this request, Plaintiff wrote "I am a vegetarian due to my religious

6   belief, can you please advise central kitchen/food manager to provide me with vegetarian meals

7   due to my religious belief." (*Id.*) Plaintiff was interviewed by Defendant Francis on January 20,

8   2006. (*Id.*, Declaration of S. Francis, ¶¶ 5, 6.) Plaintiff alleges in his verified Complaint that he

9   informed Defendant Francis that he considers himself to be a Christian and his own "sincerely

10  held religious belief" interprets bible scripture to find that the "consumption of animal meat is

11  sinful." (Compl. at 6.)

12      Defendant Francis declares that he informed Plaintiff that it was his opinion, as a

13  Protestant Chaplain, that Christianity does not require a religious diet. (Francis. Decl. ¶ 6.) He

14  states that he told Plaintiff "because he was not following the beliefs of a particular Christian

15  sect whose religious beliefs required a vegetarian diet, [Francis] could not verify his need for

16  such a diet and, therefore, he did not qualify for a religious diet." (*Id.* ¶ 10.) Accordingly,

17  Plaintiff's request for a religious diet was denied by Defendant Francis on January 20, 2006.

18  (Comp. at 6, Exhibit "E.")

19      Plaintiff filed an administrative grievance on January 22, 2006 appealing Defendant

20  Francis' decision to deny him a vegetarian meal. (*See* Pl.'s Compl., Exhibit "G," Inmate/Parolee

21  Appeal Form dated January 22, 2006, CEN Log. No. D-06-0078.) Plaintiff was, once again,

22  interviewed by Defendant Francis on February 23, 2006. (*See* Pl.'s Compl, Exhibit "H," First

23  Level Appeal Response, CEN Log No. D-06-0078 dated March 1, 2006.) During this meeting,

24  both Plaintiff and Defendant Francis recall discussing RLUIPA and its implications on the issue

25  of religious diets. (*See* Compl. at 7; Francis Decl. ¶ 14.) Defendant Francis told Plaintiff that

26  he was bound by the current state of CAL. CODE REGS. TIT. 15 § 3054 which Francis believed

27  required him to verify whether or not Plaintiff had a special religious dietary need by "contacting

28  the religious organization to which the inmate claims to be an observant member." (*Id.*) In this

1   instance, Plaintiff did not provide Defendant Francis with an identifiable "sect" of the Christian

2   faith and thus, Francis was unable to "verify" Plaintiff's need for a religious diet. (Francis Decl.

3   ¶¶ 14, 15.) Accordingly, at the First Level Appeal Response, Plaintiff's request for a religious

4   diet was denied by Defendants Francis and Juarez because Plaintiff was unable to provide

5   Defendant Francis with information to verify his request. (*Id.*)

6         One day prior to the written denial by Defendants Francis and Juarez, a "Notice of

7   Change to Department Operations Manual" was issued in which changes were made as to how

8   the religious diet program was to be implemented. (Shipman Decl., Exhibit "M," Department

9   of Corrections and Rehabilitation Notice of Change to Department Operations Manual, Food

10   Service, dated February 28, 2006.) A few weeks later, the regulation which required a Chaplain

11   to "verify" the need for a religious diet was modified to a less restrictive requirement requiring

12   that the Chaplain need only "determine" a prisoner's need for a religious diet. *See* CAL. CODE

13   REGS. TIT. 15, § 3054 (effective April 24, 2006.)

14         Plaintiff informed Defendant Francis that he would refuse to eat any food that contained

15   meat. (Francis Decl. ¶ 8.) After Plaintiff received the denial at the first level of review, he

16   submitted an appeal to the next level along with a "signed affidavit to demonstrate the sincerity

17   of his religious belief in vegetarianism." (*Id.*, Exhibit "I," Affidavit of Religious Diet signed and

18   dated by Plaintiff on March 6, 2006.) Defendant Giurbino, the Warden, denied Plaintiff's appeal

19   at the Second Level of Review on March 22, 2006 by finding that "[Plaintiff] has not presented

20   additional information or documentation to support granting his request for a vegetarian diet."

21   (Compl., Exhibit "J," Second Level Appeal Response, CEN Log No. D-06-0078, dated March

22   22, 2006.) Plaintiff submitted his appeal to the final level of administrative review. On May 20,

23   2006, N. Grannis, Chief of the Inmate Appeals Branch, notified Plaintiff that his grievance was

24   being denied at the Director's Level, in part, because "a generic claim of requiring a vegetarian

25   diet based upon religious beliefs is insufficient." (Pl.'s Comp., Ex. "K," Director's Level Appeal

26   Decision, CEN Log. No. D-06-0078, dated May 30, 2006.) Plaintiff's request for a religious diet

27   was ultimately granted in January of 2007. (Francis Decl. ¶ 23.)

28   / / /

06cv2309

**III.**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**A.     Standard of Review**

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court shall consider all admissible affidavits and supplemental documents submitted on a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations on a motion for summary judgment. Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the Court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

**B.     Qualified Immunity**

Defendants seek summary judgment of Plaintiff's First Amendment claims on the grounds of qualified immunity.

/ / /

/ / /

1          **1.     Standard of Review**

2          "Government officials enjoy qualified immunity from civil damages unless their conduct

3   violates 'clearly established statutory or constitutional rights of which a reasonable person would

4   have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v.*

5   *Fitzgerald*, 457 U.S. 800, 818 (1982)).  When presented with a qualified immunity defense, the

6   central questions for the court are:  (1) whether the facts alleged, taken in the light most

7   favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or

8   constitutional right;  and (2) whether the right at issue was "clearly established" at the time it is

9   alleged to have been violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although *Saucier*

10  originally required the Court to answer these questions in order, the U.S. Supreme Court has

11  recently held that "while the sequence set forth there is often appropriate, it should no longer be

12  regarded as mandatory." *Pearson v. Callahan*,__U.S. __, 129 S.Ct. 808, 818  (2009).

13         If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional

14  violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*,

15  533 U.S. at 201.  Similarly, if the Court determines that the right at issue was not clearly

16  established at the time of the defendant's alleged misconduct, the court may end further inquiries

17  concerning qualified immunity without determining whether the allegations in fact make out a

18  statutory or constitutional violation.  *Pearson*, 129 S.Ct. at 818.

19         **2.     "Prong" One - Constitutional Violation**

20         Under *Saucier*, the Court may first ask itself "based upon the facts taken in the light most

21  favorable to the party asserting the injury, did the officer's conduct violate a constitutional

22  right?" *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th cir. 2001) (citing *Saucier*, 533 U.S.

23  at 201).

24         At first review of Defendants' supplemental briefing it appears that Defendants seek to

25  have the Court consider only the second prong of the qualified immunity analysis which is

26  permissible under *Pearson*.  However, Defendants briefly argue that the regulation upon which

27  Defendants relied in denying Plaintiff's request for a vegetarian diet did not violate Plaintiff's

28  First Amendment rights.  (*See* Defs.' Suppl. Brief at 7 (citing *O'Lone v. Estate of Shabazz*, 482

6

U.S. 342, 348 (1987); *Turner v. Safely* 482 U.S. 78, 89 (1987)).  Thus, the Court will first consider whether, in the light most favorable to Plaintiff, the actions of Defendants violated Plaintiff's First Amendment constitutional rights.  *See Saucier*, 533 U.S. at 201.

Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  Prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone*, 482 U.S. at 348.  "A prison inmate retains his right to freely exercise his religion, although that freedom may be limited by countervailing objectives of the institution and by the loss of freedom intrinsic to incarceration." *Id.*

Courts must also "afford appropriate deference to prison officials" by applying a "reasonableness" test in determining whether a prison regulation that is alleged to impinge upon a prisoner's constitutional right is valid.  *Id.*  The factors for determining reasonableness are: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "there are alternative means of exercising the right that remain open to the prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether the inmate has identified "obvious, easy alternatives" which could be implemented at a minimal cost to legitimate penological interests, which in turn could be considered as evidence that the regulation is an "exaggerated response" to the prison's concerns.  *Turner v. Safely*, 482 U.S. 78, 89-91 (1987).

Here, the issue before the Court is the Defendants reliance on a prison regulation that required Defendants to "verify" Plaintiff's religious beliefs in order to provide him with a vegetarian diet.  In Plaintiff's verified Complaint[1], he alleges that he was asking for a vegetarian diet based on his religious beliefs.  (*See* Compl. at 7.)  In addition, Plaintiff stated that he was

---

[1]  A verified complaint or motion may be used as an opposing affidavit under FED.R.CIV.P. 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam) (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion).  To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

1   only "asking for a religious diet which the prison already provides to several inmates." (*Id.*)

2   When a plaintiff presents evidence of a lack of a rational relationship between a legitimate

3   penological interest and a prison regulation, then "prison officials must 'put forward' a

4   legitimate governmental interest to justify their regulation" and must also "provide evidence that

5   the interest proffered is the reason why the regulation was adopted or enforced." *Walker v.*

6   *Sumner*, 917 F.2d 382, 385-86 (9th Cir. 1990). Defendants offer no evidence to support their

7   assertion that the regulation in question had a legitimate penological justification. They offer no

8   justification for requiring "verification" of an inmate's religious beliefs before they would

9   provide Plaintiff with a vegetarian diet.

10        The Court finds, based on the record and in the light most favorable to Plaintiff, that

11   Defendants conduct in refusing to provide Plaintiff a vegetarian diet violated his First

12   Amendment constitutional rights.  Thus, the Court will move on to the second prong of the

13   qualified immunity analysis.

14             **3.      "Prong 2" – Clearly Established**

15        In determining whether Defendants are entitled to qualified immunity as to Plaintiff's

16   First Amendment claims. "the next, sequential step is to ask whether the right was clearly

17   established." *Saucier*, 533 U.S. at 201.  The "salient question" is whether the state of the law

18   at the time gives officials "fair warning" that their conduct is unconstitutional. *Hope*, 536

19   U.S.730, 740 (2002).   The relevant inquiry must focus on "what the officer reasonably

20   understood his powers and responsibilities to be, when he acted, under clearly established

21   standards." *Saucier*, 533 U.S. at 208.

22        Plaintiff's claims with regard to his religious diet requests first arose towards the end of

23   2005.  (Pl.'s Compl. at 5-9.)  He continued to follow through with administrative grievances

24   challenging the denial of a religious diet and had two interviews with Defendant Francis in

25   January and February of 2006.  (Francis Decl. ¶¶ 5, 14.)  During this time, Defendant Francis

26   relied on the prison's regulation in effect at the time that required "verification" of Plaintiff's

27   religious beliefs.  (*Id.* ¶¶ 7-11.)

28   / / /

8

1      The arguments made in Defendants supplemental brief are identical to those that
2  Defendants made in their original motion seeking qualified immunity as to Plaintiff's RLUIPA
3  claims.  That is, Defendants argue that prison officials "followed the law as it existed in
4  California at the time Grimes requested his religious diet" and therefore, the law was not "clearly
5  settled so as to put prison officials on notice that former section 3054 was patently violative of
6  fundamental constitutional principles."  (Defs.' Suppl. Brief at 7.)

7      This Court has rejected this argument as to the RLUIPA claims due to the fact that the
8  Ninth Circuit's decision in *Warsoldier* had been issued several months before Plaintiff first
9  initiated his request for a religious diet.  In *Warsoldier*, the Ninth Circuit held that if a prisoner
10 is challenging a regulation as a violation of their rights under RLUIPA, the prison officials must
11 actually have "considered and rejected the efficacy of less restrictive measures before adopting
12 the challenged practice."  *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005).  The
13 Ninth Circuit upheld this Court's ruling holding that "[t]he district court properly concluded that
14 defendants were not entitled to qualified immunity on Grimes's claim under [RLUIPA] because
15 Grimes's rights under RLUIPA were clearly established in late 2005 and 2006 when defendants
16 denied his requests for a vegetarian diet based on his religious beliefs."  *Grimes v. Tilton*, No.
17 09-55578 (9th Cir. July 14, 2010).

18     Here, the applicable law that Defendants should have relied upon in making a
19 determination regarding Plaintiff's right to a vegetarian meal was clearly established in 1987,
20 the year the United States Supreme Court decided *O'Lone*.  This decision, in part, requires there
21 to be a "legitimate penological interest" when a prison regulation impinges on an inmates'
22 constitutional rights.  *O'Lone*, 482 U.S. at 349.  As Defendant Francis stated in his declaration,
23 "my conversations with Plaintiff and the memorandum dated March 1, 2006, make clear, my sole
24 reason for denying Plaintiff his request for a vegetarian [diet] was my application of title 15,
25 section 3054 that was in effect at that time."  (Francis Decl. ¶ 17.)  Other than the regulation
26 itself, Defendants offer no reason, legitimate or otherwise, why they refused to allow Plaintiff
27 to have a vegetarian diet that was already offered to other prisoners.  Defendants offer no
28 penological interest upon which the regulation is based to support the denial of Grimes's request.

1  Plaintiff clearly challenged the prison regulation with Defendants but they failed to consider
2  whether the prison regulation did impinge on Plaintiff's First Amendment rights.  Moreover, as
3  stated above, in 1990 the Ninth Circuit also held that prison officials must 'put forward' a
4  legitimate governmental interest to justify their regulation" and must also "provide evidence that
5  the interest proffered is the reason why the regulation was adopted or enforced."  *Walker*, 917
6  F.2d at 385-86.

7          Based on the fact that the state of the law regarding an inmate's First Amendment rights
8  was clearly established at the time Plaintiff was denied a religious diet, the Court finds that a
9  reasonable officer would have known that the denial of a religious diet violated Plaintiff's First
10 Amendment rights.  Accordingly, Defendants' Motion for Summary Judgment on qualified
11 immunity grounds is **DENIED.**

12                                          **IV.**

13                            **CONCLUSION AND ORDER**

14         For all the reasons set forth above, the Court hereby:

15         **DENIES** Defendants' Motion for Summary Judgment of Plaintiff's First Amendment
16 claims on qualified immunity grounds.

17         **IT IS SO ORDERED.**

18
   DATED:  September 6, 2011
19
20                                         Honorable Barry Ted Moskowitz
21                                         United States District Judge
22
23
24
25
26
27
28

                                            10